IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Jaki M. Dawson,** ) | |
|     **Petitioner,** ) | |
| ) | |
| v. ) | 1:19cv970 (AJT/TCB) |
| ) | |
| **Harold W. Clarke,** ) | |
|     **Respondent.** ) | |

MEMORANDUM OPINION

Jaki M. Dawson, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his September 10, 2014 convictions in the Circuit Court of the City of Hopewell. Respondent has filed a Motion to Dismiss, with a supporting brief, and Dawson has been afforded the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss must be granted, and the petition dismissed.

I. Procedural History

On June 4, 2014, after a bench trial, the Circuit Court of the City of Hopewell convicted Dawson of eluding the police, possession of a firearm by a non-violent felon, assault on a police officer (Officer Pisarek), possession of marijuana, and driving on a suspended license (Case Nos. CR14-07, -08, and -09, and CR14-052 and -053). However, the circuit court found the evidence insufficient to convict Dawson of three other charges: a second count of felony assault on an officer (Officer Fitzsimmons), resisting arrest, and driving under the influence. (Case Nos. CR14-010, CR14-043, and CR14-051). On August 27, 2014, the circuit court sentenced Dawson to three years in prison with two years suspended for the eluding a police officer

conviction; two years in prison for the possession of a firearm after being convicted of a non-violent felony conviction; five years in prison with three years suspended for the assault on a law enforcement officer conviction; twelve months in prison with six months suspended for the possession of marijuana conviction; and twelve months in prison with six months suspended for the driving on a suspended license conviction.

On June 26, 2015, the Court of Appeals of Virginia denied Dawson's petition for appeal and on September 8, 2015, denied his petition for rehearing. Dawson v. Commonwealth, Record No. 1642-14-2 (hereinafter "CAV R. at ___"). On February 4, 2016, the Supreme Court of Virginia dismissed Dawson's petition for appeal as untimely (citing Va. Sup. Ct. R. 5:17(a)(2)) and on May 12, 2016, denied his petition for rehearing. Dawson v. Commonwealth, Record No. 151698.

The Court of Appeals of Virginia summarized the evidence as follows:

[A]t approximately 1:30 a.m. on November 22, 2013, Officer Daniel Pisarek saw a vehicle travelling on and off the yellow lines of the road. Appellant was the driver of the vehicle. Officer Pisarek activated his emergency signals. Appellant did not stop immediately; instead, he drove another three or four blocks before abruptly turning left into a 7-Eleven convenience store parking lot.

When Officer Pisarek approached the vehicle, appellant was "[v]ery argumentative." Officer Pisarek asked for appellant's driver's license and registration. He also asked appellant to roll down his window, as it was only halfway down. Appellant said that the window was broken, but Officer Pisarek was able to push the window down all of the way. Once the window was down, Officer Pisarek smelled a "very strong alcohol beverage emitting from the vehicle, but also a[n] overpowering smell of fresh marijuana." Officer Pisarek called for an additional unit to respond. He noticed a lot of movement in the car, as if appellant were looking for something. He asked appellant to turn off the car and place the keys on the dashboard. Initially, appellant complied, but when he noticed the arrival of Officer Fitzsimmons, appellant grabbed the keys, started the car, and "threw the car immediately into reverse." Officer Fitzsimmons was standing by the rear tire on the right side of the car. When the car reversed, Officer Pisarek saw Officer Fitzsimmons "go down on the side of the vehicle and disappear." Officer Fitzsimmons said that when the car started to back up, he

2

put out his hand. The car bumped Officer Fitzsimmons and knocked him backward.

Appellant put the car in drive and "cut the wheel hard left." As he did so, Officer Pisarek "spun [his] hips to keep from getting hit by the car, as it came by and grazed [him]." Officer Pisarek's weapon was caught in the window frame, and he started to get dragged. Officer Pisarek shot appellant with his Taser. Appellant "immediately succumbed," and the vehicle stopped. Officer Pisarek turned off the car. Other police officers arrived and removed appellant from the car.

Appellant was placed under arrest and was "still very, very combative" verbally. The car was searched. Officer Pisarek retrieved "folded money all over the place," "[e]lectronic scales, packaging material, boxes of baggies. Baggies all over the car with the corners tore off them." He also located a "loaded, chambered and cocked semiautomatic .40 caliber handgun" that was in the area where appellant was moving and looking for something. The gun was under the passenger seat with the butt of the handgun near the backseat. Appellant also was searched. Officer Pisarek found a "small, but very odorous bag of fresh marijuana" on appellant's person, as well as folded money.

Appellant testified that he was driving a friend's car on the night in question. He did not search the car before he used it and testified that he did not know a gun was in the car. At approximately 1:00 a.m., he went to Wawa to get a sandwich, which he was eating when Officer Pisarek was behind him. Appellant said that he pulled into the 7-Eleven store and asked why the officer stopped him.

Appellant admitted that he and Officer Pisarek "went back and forth a little bit." After showing the officer his identification card, insurance card, and an expired registration, appellant said, "[L]ook, if you don't have any better reason for pulling me over, I've got better things to do." Appellant testified that Officer Pisarek made a gesture, which appellant interpreted as a gesture to leave. Appellant said that he never saw Officer Fitzsimmons when he put the car in reverse. He explained that he "put the vehicle in drive and ... slowly pulled off" when Officer Pisarek used his Taser. He testified that Officer Pisarek was "standing back away from the vehicle" and was not near his car when he placed the car in drive.

(CAV R. at 187-88).

On April 5, 2017, Dawson filed a petition for writ of habeas corpus in the circuit court, and raised the following claims:

3

a) Counsel was ineffective because "Defense counsel failed to cause the testimony of the preliminary hearing to be recorded so as to provide a basis for subsequent impeachment of the prosecutrix."   [Dkt. No. 1-1 at 27-33];

b) Counsel was ineffective because counsel failed to present to the court the order that remanded the charges in case numbers GT-13017615-00 and GT13017613-00."   [Dkt. No. 1-1 at 33-34];

c) Counsel was ineffective because he "failed to object to mandatory sentence that was imposed on petitioner."   [Dkt. No. 1-1 at 35-37];

d) Counsel was ineffective for failing "to subpoena or object to the presentation of the lab analysis without examiner being present."   [Dkt. No. 1-1 at 37-40];

e) Counsel was ineffective for "allowing the prosecutrix to read" the criminal complaint into the record. [Dkt. No. 1-1 at 40-42];

f) Counsel was ineffective because he misled the petitioner by telling him he could no longer present motions to set aside "that the commonwealth withheld [exculpatory information of] the names, identities and witness(es) to include the (EMT)·Emergency Medical Technician" in violation of Brady v. Maryland, 373 U.S.83 (1963). [Dkt. No. 1-1 at 42-45];

g) Counsel was ineffective due to "representing a conflict of interest between he and Mr. Dawson."   [Dkt. No. 1-1 at 45-50];

h) Counsel was ineffective because he "create[d] an impression of being absent and helpless on the part of the petitioner."   [Dkt. No. 1-1 at 50-52];

i) Counsel was ineffective for not complying "with plea-bargain negotiation, Sixth Amendment right to counsel" [Dkt. No. 1-1 at 52-60];

j) Counsel was ineffective for failing to protect Dawson's "Fourth Amendment right to illegal search and seizures" [Dkt. No. 1-1 at 61-63];

k) Counsel was ineffective because he filed an Anders brief.   [Dkt. No. 1-1 at 63-67];

l) Counsel was ineffective because he failed to investigate what happen[ed] to the finance of the petitioner in case where the money was taken, and distribution was not a factor."   [Dkt. No. 1-1 at 68-70];

m) There was a "14th Amendment violation of due process for failure of the prosecution (Jessica Vormwald) to present exculpatory evidence and impeachment evidence, which prejudiced the petitioner from having a fair trial." [Dkt. No. 1-1 at 71-76];

n) Biased or prejudiced judge.   [Dkt. No. 1-1 at 77-86];

o) The petitioner is actually innocent.   [Dkt. No. 1-1 at 87-91];

4

p) "The petitioner brings forth a Sixth and Fourteenth Amendment violation of Equal Protection Clause of under representation of woman and minorities in selection of the Grand Jury." [Dkt. No. 1-1 at 92-95];

On February 21, 2019, the circuit court dismissed Dawson's habeas petition as time-barred pursuant to Virginia Code § 8.01-654(A)(2). Dawson appealed to the Supreme Court of Virginia and raised the following assignments of error:

1) The trial court erred in violation of Virginia Code 8.01-654(a)(2) by ruling the petitioner's habeas corpus was time barred, in violation of his due process.

2) The trial court erred by not recognizing, that [Virginia Code §] 8.01-229, tolled [Virginia Code 8.01-654(a)(2)], being that the petitioner only became aware of the "newly discovered evidence" on January 6, 2017.

3) The trial court erred by not ruling on the petitioners "newly discovered evidence" which falls under Brady v. Maryland, 373 U.S. 83 (1963), which held a parallel effect of misrepresentation (ineffective assistance of counsel) Strickland v. Washington, 466 U.S. 668, 692(1984).

4) The trial court erred by not ruling on the materiality, prejudice, and the grave injustice, suffered by petitioner in which the ends of justice Sup. Ct 5:25 may prevail on the "newly discovered evidence."

On November 29, 2018, the Supreme Court of Virginia refused the petition for appeal. Dawson v. Clarke, Record No. 180627.

On July 10, 2019, Dawson filed the current petition in which raises the following claims:

1) The petitioner received "[n]ewly discovered evidence" in the form of "exculpatory evidence" which he raised on direct appeal and in state habeas. [Dkt. No. 1-1 at 6-7]. The evidence is an "event report" he obtained attached to an affidavit submitted in a §1983 proceeding, Dawson v. Pisarek, Civil Action No. 1:15cv993. [Dkt. No. 1-1 at 4-9];

2) The trial court erred by finding petitioner's state habeas petition was untimely under Virginia Code § 8.01-654 and therefore time-barred [Dkt. No. 1-1 at 15-16];

3) "Presents the petitioner's habeas corpus as a whole that was presented to the Circuit Court of Hopewell, VA, and the Supreme Court of Virginia." [Dkt. No. 1 at 9]. The attachment to the petition sets forth the following claims:

5

a. Counsel was ineffective because "Defense counsel failed to cause the testimony of the preliminary hearing to be recorded so as to provide a basis for subsequent impeachment of the prosecutrix." [Dkt. No. 1-1 at 27-33];

b. Counsel was ineffective because counsel failed to present to the court the order that remanded the charges in case numbers GT-13017615-00 and GT13017613-00." [Dkt. No. 1-1 at 33-34];

c. Counsel was ineffective because he "failed to object to mandatory sentence that was imposed on petitioner." [Dkt. No. 1-1 at 35-37];

d. Counsel was ineffective for failing "to subpoena or object to the presentation of the lab analysis without examiner being present." [Dkt. No. 1-1 at 37-40];

e. Counsel was ineffective for "allowing the prosecutrix to read" the criminal complaint into the record. [Dkt. No. 1-1 at 40-42];

f. Counsel was ineffective because he misled the petitioner by telling him he could no longer present motions to set aside "that the commonwealth withheld [exculpatory information of] the names, identities and witness(es) to include the (EMT)·Emergency Medical Technician" in violation of Brady v. Maryland, 373 U.S.83 (1963). [Dkt. No. 1-1 at 42-45];

g. Counsel was ineffective due to "representing a conflict of interest between he and Mr. Dawson." [Dkt. No. 1-1 at 45-50];

h. Counsel was ineffective because he "create[d] an impression of being absent and helpless on the part of the petitioner." [Dkt. No. 1-1 at 50-52];

i. Counsel was ineffective for not complying "with plea-bargain negotiation, Sixth Amendment right to counsel" [Dkt. No. 1-1 at 52-60];

j. Counsel was ineffective for failing to protect Dawson's "Fourth Amendment right to illegal search and seizures" [Dkt. No. 1-1 at 61-63];

k. Counsel was ineffective because he filed an Anders brief. [Dkt. No. 1-1 at 63-67];

l. Counsel was ineffective because he failed to investigate what happen[ed] to the finance of the petitioner in case where the money was taken, and distribution was not a factor." [Dkt. No. 1-1 at 68-70];

    m. There was a "14th Amendment violation of due process for failure of the prosecution (Jessica Vormwald) to present exculpatory evidence and impeachment evidence, which prejudiced the petitioner from having a fair trial." [Dkt. No. 1-1 at 71-76];

    n. Biased or prejudiced judge. [Dkt. No. 1-1 at 77-86];

    o. The petitioner is actually innocent. [Dkt. No. 1-1 at 87-91];

    p. "The petitioner brings forth a Sixth and Fourteenth Amendment violation of Equal Protection Clause of under representation of woman and minorities in selection of the Grand Jury." [Dkt. No. 1-1 at 92-95];

## II. Statute of Limitations

The applicable statute of limitations, 28 U.S.C. § 2244(d), bars the claims presented in Dawson's federal habeas petition.

Under the Antiterrorism and Effective Death Penalty Act of 1996, a petitioner has a one-year period in which to file a federal habeas corpus petition. This period generally begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and <u>excludes</u> "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(1)(A), (d)(2).

On May 12, 2016, the Supreme Court of Virginia denied Dawson's petition for rehearing at which time Dawson's direct appeal concluded. To account for the time in which he could have petitioned the United States Supreme Court for review, the one-year statute of limitations began to run on August 10, 2016, or 90 days from May 12, 2016. See <u>Gonzalez v. Thaler</u>, 565 U.S. 134, 150 (2012); S. Ct. R. 13.1; <u>see also</u> <u>Harris v. Hutchinson</u>, 209 F.3d 325, 327 (4th Cir. 2000). Unless tolled, the federal statute of limitations would lapse on August 11, 2017.

On April 5, 2017, Dawson filed his state habeas petition.[1] On November 29, 2018, Dawson's state habeas proceedings concluded when the Supreme Court of Virginia dismissed Dawson's petition for appeal from the dismissal of his state habeas petition by the circuit court. Accordingly, the federal statute of limitations was tolled between April 5, 2017 and November 29, 2018 (or 603 days), leaving Dawson with 127 days after November 29, 2018 in which to file a federal habeas petition. Therefore, the applicable statute of limitations expired on April 5, 2019. On July 10, 2019, Dawson executed his federal petition [Dkt. No. 1 at 15],[2] which is 96 days after the expiration of the statute of limitations. Accordingly, unless Dawson can establish that the statute of limitations does not apply or should otherwise be tolled, see Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002), his federal petition is untimely under § 2244(d).

A federal court may review otherwise untimely claims if the petitioner demonstrates an entitlement to equitable tolling, see Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005), or through a showing of actual innocence, see McQuiggin v. Perkins, 569 U.S. 383 (2013). To qualify for equitable tolling, a petitioner must demonstrate that (1) he had been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way, preventing him from timely filing. Pace, 544 U.S. at 418. To establish actual innocence, "[new] evidence must establish sufficient doubt about [a petitioner's] guilt to justify the conclusion that his [incarceration] would be a miscarriage of justice *unless* his conviction was the product of a fair trial." Schlup v. Delo, 513 U.S. 298, 316 (1995) (emphasis in original).

---

[1] Dawson's state habeas petition was notarized on April 5, 2017 which would be the earliest date he could have turned the petitioner over to state officials for mailing. See Houston v. Lack, 487 U.S. 266, 276 (1988) (habeas petition considered filed when delivered to prison officials for mailing).

[2] See Houston, 487 U.S. at 276.

In this case, Dawson asserts his federal petition should be considered timely because exculpatory evidence was wrongly withheld from him, his attorney erred during the direct appeal, the ends of justice "demand it" because of errors in the state habeas proceeding, and petitioner is not trained in the law.   [Dkt. No. 1 at 14].

The evidence Dawson claims he was wrongly denied was a report that allegedly would have impeached Officer Pisarek.   But nothing impeded Dawson from asserting any claim or claims associated with the report upon which he bases his exculpatory evidence and newly discovered evidence arguments — indeed, the report was in his possession prior to the filing of his state habeas petition.   On May 15, 2017, Dawson filed a memorandum with the circuit court and attached the report and accompanying affidavit to the memorandum.   [Dkt. No. 1-1 at 42-45].   Further, Dawson admitted in the memorandum that he had received the report and accompanying affidavit "on 1/06/17," during a civil rights action he had filed in federal court against the officer.   [Dkt. No. 1-1 at 1-3].[3]   Thus, the record establishes, as a matter of fact, that Dawson knew about the alleged newly discovered evidence long before the statute of limitations had lapsed.   The timing of the disclosure did not inhibit Dawson's ability to raise the claim in a timely manner.   See Wood v. Spencer, 487 F.3d 1, 7 (1st Cir. 2007) ("[A] state-created impediment must, to animate the limitations-extending exception [of § 2244(d)(1)(B)], 'prevent' a prisoner from filing for federal habeas relief."); Lloyd v. Vannatta, 296 F.3d 630, 633 (7th Cir. 2002) ("the plain language of the statute makes clear that whatever constitutes an

---

[3] Officer Pisarek prevailed in the civil rights action.   Dawson v. Pisarek, No. 1:15-cv-00993 (AJT/JFA) (E.D. Va. Aug. 21, 2017), appeal dismissed, No. 17-7172 (4th Cir. Oct. 30, 2017). The report was part of an affidavit submitted by Donita Williams, the Communications' Supervisor for the Hopewell Police Department, and was based upon information transmitted during the stop and arrest.   [No. 1:15-cv-00993, Dkt. 20-2 at 1-2].   The report provides, per Officer Pisarek, that the "subject [Dawson] attempted to run him over."   [Id. at 4].

9

impediment must prevent a prisoner from filing his petition").

Second, the newly discovered evidence also does not satisfy the "narrow" miscarriage of justice exception, which concerns actual, as compared to legal, innocence. See Calderon v. Thompson, 523 U.S. 538, 559 (1998) (citations omitted). "'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial. Given the rarity of such evidence, 'in virtually every case, the allegation of actual innocence has been summarily rejected.'" Id. (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)). Dawson's claim of innocence is based upon a portion of the event report attributed to Officer Pisarek that reads "attempted to run over him." [Dkt. No. 1-1 at 6]. Dawson argues that the use of the word "attempted" would have impeached Officer Pisarek's testimony that Dawson had actually hit Pisarek. Consequently, if he had been able to impeach Pisarek with the report he could have cast doubt on Pisarek's credibility, thereby proving his actual innocence.[4] Dawson's argument has no merit.

Assuming that Officer Pisarek actually stated to the dispatcher that Dawson had "attempted" to run him over, that statement is not inconsistent with Officer Pisarek's trial testimony. At trial, Pisarek testified that he attempted to avoid the car when Dawson cut the wheels and proceeded to drive forward. Pisarek had turned his hips to avoid contact with the vehicle and did not suffer any injury. If Dawson had used the word "attempt" in the report to try and impeach Officer Pisarek, that would have simply provided Officer Pisarek an opportunity to explain, as he did at trial, what had transpired from his perspective.

---

[4] See, e.g., Sawyer v. Whitley, 505 U.S. 333, 349 (1992) ("[L]atter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of the [witness's] account."); Munchinski v. Wilson, 694 F.3d 308, 338 (3d Cir. 2012) (impeachment evidence generally insufficient to establish entitlement to finding of actual innocence).

Moreover, Dawson was charged with violating Virginia Code § 18.2-57, which provides, in pertinent part, that "any person commits *an assault or an assault and battery* against another knowing or having reason to know that such other person is ... a law-enforcement officer" is guilty of a Class 6 felony. Va. Code § 18.2-57(emphasis added). Although the indictment charged assault and battery of a law enforcement officer, even if Dawson was able to convince the trial judge that there was only an assault, the prosecution could have simply moved to amend the indictment to conform to the evidence. Virginia Code § 19.2-231 allows a trial court to amend an indictment to conform to the evidence as long as the amendment does not change the "the nature or character of the offense charged." Edwards v. Commonwealth, 243 S.E.2d 834, 839 (Va. 1978).[5] Such an amendment, if it had been necessary, would have been allowed because it would not have changed the nature or character of the offense. See Adams v. Commonwealth, 534 S.E.2d 347, 350 (Ct. App. Va. 2000) (a battery is an unlawful touching of another, but the touching need not result in injury to the person); cf. id. (to prove an assault, the prosecution need only prove "an attempt or offer, with force and violence, to do some bodily hurt to another") (citing Harper v. Commonwealth, 85 S.E.2d 249, 255 (Va. 1955)).

Dawson next argues that he is entitled to equitable tolling because the state court allegedly erred in denying his state habeas petition as untimely. The Supreme Court of Virginia considered Dawson's allegation of error regarding timeliness, particularly with respect to his allegations that he was denied exculpatory evidence and that the Supreme Court of Virginia dismissed his petition for appeal on November 29, 2018. Dawson, Record No. 180627. Even

---

[5] Section 19.2-231 "is remedial in nature and is to be liberally construed in order to achieve the laudable purpose of avoiding further unnecessary delay in the criminal justice process by allowing amendment, rather than requiring reindictment by a grand jury." Powell v. Commonwealth, 552 S.E.2d 344, 356 (Va. 2001).

11

assuming the Supreme Court of Virginia erred in applying state law, the alleged error did not prevent Dawson from timely filing his federal habeas petition. At the time the Supreme Court of Virginia refused the petition, Dawson still had 127 days (over four months) in which to file his federal habeas petition.

Lastly, to qualify for equitable tolling, a petitioner must demonstrate that (1) he had been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. Holland v. Florida, 560 U.S. 631, 649 (2010) (citing Pace, 544 U.S. at 418). A petitioner asserting equitable tolling "'bears a strong burden to show specific facts'" that demonstrate fulfillment of both elements. Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Brown v. Barrow, 512 F.3d 12304, 1307 (11th Cir. 2008)). The petitioner generally is obliged to specify the steps he took in diligently pursuing his federal claim. Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001). In addition, the petitioner must "demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000). It is widely recognized that equitable tolling is to be applied only infrequently. Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) ("We believe, therefore, that any resort to equity must be reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.").

Ultimately, as discussed above, Dawson argues for equitable tolling based on the report that could have allegedly impeached Officer Pisarek. However, Dawson had that report in his

12

possession prior to filing his state habeas petition and sought relief in state habeas based upon the report. He therefore cannot demonstrate that he was diligent in pursuing his federal habeas remedy; and is therefore not entitled to equitable tolling to excuse his untimely petition.

### III. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 7] is granted, and this petition must be dismissed with prejudice. An appropriate Order and judgment shall issue.[6]

Entered this 16th day of Sept. 2020.

Alexandria, Virginia

Anthony J. Trenga
United States District Judge

---

[6] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Dawson fails to meet this standard.